**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

AMANDA ENSING,

            Plaintiff,

    vs.

SEPHORA USA, INC., DEBORAH YEH, and DOES
1-1000,

            Defendants.

Case No. 3:21-cv-0421

Judge William L. Campbell
Magistrate Judge Jeffrey S. Frensley

JURY DEMAND

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO (1) DISMISS OR TRANSFER PURSUANT TO RULES 12(B)(2) AND
12(B)(3); OR (2) DISMISS PURSUANT TO RULE 12(B)(6); OR
(3) DISMISS PURSUANT TO TENNESSEE PUBLIC PARTICIPATION ACT**

**PIERCE BAINBRIDGE P.C.**
355 South Grand Avenue, 45th Floor
Los Angeles, CA 90071
(213) 262-9333

*Attorneys for Plaintiff Amanda Ensing*

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

ARGUMENT  2

I.      THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL UNDER FED. R. CIV. P. 12(B)(6) BECAUSE THEY HAVE FAILED TO ESTABLISH THAT MS. ENSING'S CLAIMS ARE DEFICIENT AS A MATTER OF LAW ..................................................................................... 2

      A.    Ms. Ensing Need Not Plead Actual Malice Because the Defamatory Statements Were On a Matter That Is Quintessentially of Private Concern ........................................................................................... 2

            1.    Content ........................................................................... 3

            2.    Form ............................................................................... 3

            3.    Context ........................................................................... 4

      B.    Ms. Ensing Need Not Plead Actual Malice Because She Is Not a Public Figure for Purposes of This Litigation ............................... 5

            1.    The Defendants Fail to Establish that Ms. Ensing Is a General-Purpose Public Figure ....................................... 5

            2.    The Defendants Fail to Establish That Ms. Ensing Is a Limited-Purpose Public Figure ...................................... 6

            a.    The Defendants fail to establish the existence of a public controversy ..................................................... 6

            b.    Ms. Ensing Pleads Facts Sufficient to Establish That the Defendants Acted With Actual Malice ............................ 9

      C.    The Defendants Have Failed to Establish That the Defamatory Statements Are Not Actionable ................................................ 10

            1.    Sephora's Allegation That Ms. Ensing Shared Content That Is "Not Aligned With Sephora's Values Around Inclusivity" Is Actionable ................................................................. 12

            2.    Sephora's Statement That Ms. Ensing Was an "Inappropriate Partner for Its Brand" Is Actionable ............................ 14

            3.    Sephora's Statement That Ms. Ensing "Made Light of the Violence and Tragic Loss of Life" at the Capitol Is

Actionable ...................................................................................................... 14

        4.      Ms. Yeh's Statement That Ms. Ensing "Used Her Platform To Share or Highlight Racially Insensitive and Discriminatory Language, and Made Light of the Violence at Our Nation's Capital Last Month" Is Actionable ...................... 15

   D.     The Defendants Have Failed to Show That They Are Entitled to Relief Under the Tennessee Public Participation Act (TPPA) ................ 15

   E.     Ms. Ensing Has Stated a Claim for False Light ........................................ 16

   F.     Ms. Ensing Has Stated a Claim for Tortious Interference With Prospective Business Relationships .......................................................... 17

   G.    Ms. Ensing Has Stated a Claim for Conspiracy ....................................... 18

II.    THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL UNDER FED. R. CIV. P. 12(B)(2) BECAUSE MS. ENSING HAS ESTABLISHED PERSONAL JURISDICTION ................................................................................ 18

   A.     This Court Has Personal Jurisdiction Over the Defendants ..................... 19

   B.     If the Court Finds That It Lacks Personal Jurisdiction, Ms. Ensing Requests Jurisdictional Discovery .......................................................... 21

III.   THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL UNDER FED. R. CIV. P. 12(B)(3) BECAUSE VENUE IS PROPER IN THIS DISTRICT .................................................................................................................. 21

   A.     Venue Is Proper As to Sephora ................................................................ 22

   B.     Venue Is Proper As to Ms. Yeh ............................................................... 22

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Addiction Ctrs., Inc. v. Nat'l Assoc. of Addiction Treatment Providers*,
No. 3:19-cv-00367, 2021 WL 2433218 (M.D. Tenn. Jan. 25, 2021) ...........................2, 10, 11

*Armstrong v. Shirvell*,
No. 11-11921, 2013 WL 4833948 (E.D. Mich. Sept. 11, 2013), *aff'd in part,
rev'd in part, and remanded on other grounds,* 596 F. App'x 433 (6th Cir.
2015) ......................................................................................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................2

*Audi AG v. Izumi*,
204 F. Supp. 2d 1014 (E.D. Mich. 2002)...............................................................................23

*Bay Cty. Democratic Party v. Land*,
340 F. Supp. 2d 802 (E.D. Mich. 2004).................................................................................22

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*,
768 F.3d 499 (6th Cir. 2014) .................................................................................................18

*Blessing v. Chandraskhar*,
988 F.3d 889 (6th Cir. 2021)..................................................................................................19

*Brewer v. All. Coal, LLC*,
No. 20-41-DLB-EBA, 2021 U.S. Dist. LEXIS 134886 (E.D. Ky. July 20,
2021) ......................................................................................................................................21

*Burger King Corp v. Rudzewicz*,
471 U.S. 462 (1985)................................................................................................................19

*Calder v. Jones*,
465 U.S. 783 (1984)................................................................................................................20

*Clark v. ABC, Inc.*,
684 F.2d 1208 (6th Cir. 1982).................................................................................................6

*Clark v. Viacom Intern., Inc.*,
617 F. App'x 495 (6th Cir. 2015) ...........................................................7, 10, 12, 14

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) .................................................................................................18

iii

*Connick v. Myers*,
    461 U.S. 138 (1983)..................................................................................................3

*Dunn & Bradstreet*,
    472 U.S. 749 (1985)..................................................................................................3

*First of Mich. Corp. v. Bramlet*,
    141 F.3d 260 (6th Cir. 1998) ........................................................................... *passim*

*Funks v. Scripps Media, Inc.*,
    570 S.W.3d 205 (Tenn. 2019)....................................................................................9

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).......................................................................................5, 6, 7, 10

*Harris v. Bornhorst*,
    513 F.3d 503 (6th Cir. 2008) ...................................................................................10

*Helicopteros Nactionales De Colombia v. Hall*,
    466 U.S. 408 (1984)................................................................................................20

*Higgins v. Ky. Sports Radio, LLC*,
    951 F.3d 728 (6th Cir. 2020) ..................................................................................2, 3

*Hudik v. Fox News Network, LLC*,
    3:19-cv-00127, 2021 WL 62832 (M.D. Tenn. Jan 7, 2021) ........................... *passim*

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979)..................................................................................................8

*Kamelgard v. Macura*,
    585 F.3d 334 (7th Cir. 2009) ...................................................................................19

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)....................................................................................................10

*Myers v. Pickering Firm*,
    959 S.W.2d 152 (Tenn. Ct. App. 1997) .....................................................................9

*Paralyzed Veterans of Am. v. McPherson*,
    No. C 06-4670, 2008 U.S. Dist. LEXIS 69542 (N.D. Cal. Sept. 8, 2008) .............14

*Pate v. Serv. Merch. Co.*,
    959 S.W.2d 569 (Tenn. Ct. App. 1996)......................................................................9

*Pickens v. Cordia*,
    433 S.W.3d 179 (Tex. App. 2014) ............................................................................6

*Press Inc. v. Verran*,
    569 S.W.2d 435 (Tenn. 1978) ........................................................................5

*Rickett v. Smith*,
    No. 1:14CV-70, 2014 U.S. Dist. LEXIS 154200 (W.D. Ky. Oct. 30, 2014) .........................22

*San Diego v. Roe*,
    543 U.S. 77 (2004) ....................................................................................2, 3

*Snead v. Redland Aggregates Ltd.*,
    998 F.2d 1325 (5th Cir. 1993) .......................................................................3

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ...................................................................................3, 4

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1980) ......................................................................6

*Thomas M. Cooley Law School v. Kurzon Strauss, LLP*,
    759 F.3d 522 (6th Cir. 2014) .........................................................................5

*Time, Inc. v. Firestone*,
    424 U.S. 448 (1976) ....................................................................................7

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) .........................................................................2

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
    71 S.W.3d 691 (Tenn. 2002) ...................................................................17, 18

*Uffner v. La Reunion Francaise, S.A.*,
    244 F.3d 38 (1st Cir. 2001) .........................................................................22

*Weidlich v. Rung*,
    No. M2017-00045, 2017 WL 4862068 (Tenn. Ct. App. Oct. 26, 2017 .........................13

*Zimmer Enters. v. Atladia Imps., Inc.*,
    478 F. Supp. 2d 983 (S.D. Ohio 2007) ...........................................................22

**Statutes**

28 U.S.C. § 1391 .....................................................................................22

28 U.S.C. § 1406 .....................................................................................23

Tenn. Code Ann. § 20-17-105(a) ...................................................................15

Tenn. Code Ann. § 20-17-107(b) ...................................................................16

**Federal Rules**

Fed. R. Civ. P. 9(b) ..............................................................................................9, 19

Fed. R. Civ. P. 12(B)(2) ............................................................................................18

Fed. R. Civ. P.  12(B)(3) ...........................................................................................21

Fed. R. Civ. P. 12(B)(6) .............................................................................................2

Fed. R. Evid. 201 ......................................................................................................14

**Other Authorities**

Camille Moore, *10 Things You Didn't Know About Amanda Ensing*, TVOM (Jan. 2021), https://www.tvovermind.com/amanda-ensing ............................................21

Restatement (2d) of Torts § 652D, cmt. a. Publicity ...........................................16, 17

*Sen. Cruz Issues Statement on January 6 Commission*, OFFICE OF U.S. SENATOR FOR TEXAS, TED CRUZ (May 28, 2021), https://www.cruz.senate.gov/?p=press_release&id=5858 .....................................14

*Statement by President Joe Biden on the Six-Month Anniversary of the January 6th Insurrection on the Capitol*, WHITEHOUSE.GOV (July 6, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/06/statement-by-president-joe-biden-on-the-six-month-anniversary-of-the-january-6th-insurrection-on-the-capitol ...................................14

## INTRODUCTION

From October 2012 to the January 2021, Ms. Ensing and Sephora had a fruitful and mutually beneficial business relationship. Sephora consistently praised Ms. Ensing, first for her work as an employee and then for her work on Sephora's behalf as an influencer. Indeed, as late as January 28, 2021 Sephora "loved" Ms. Ensing's content. Then, this relationship came under attack by a small cadre of ill-motivated and disingenuous provocateurs. To appease the malingerers, Sephora and Deborah Yeh (collectively, the "Defendants") published four false statements (the "Defamatory Statements" or "Statements") accusing Ms. Ensing of sharing content supportive of racial bias in the workplace, opposing justice, and making light of the horrific events of January 6. The Defendants knew the accusations were false, yet they published them with alacrity.

Now, in their motion to dismiss, the Defendants are attempting to recast themselves as paragons of free speech and hide behind the First Amendment. This transparent attempt to avoid responsibility fails on several grounds.

*First*, the Defendants assume that Ms. Ensing must plead actual malice, yet they fail to explain why that standard applies. Their assumption is wrong. The Defamatory Statements concerned Sephora's business relationship with Ms. Ensing. This is quintessentially a matter of private concern. Further, the Defendants have failed to establish that Ms. Ensing is a public figure for purposes of this litigation.

*Second*, the Defendants self-servingly claim that the Defamatory Statements were only opinions. However, this does not absolve them of responsibility because the Statements were all based on undisclosed facts. In this Circuit, such "mixed" opinions are actionable.

*Third*, the Defendants' attempts to avoid responsibility by appealing to jurisdiction and venue fail because Ms. Ensing has pleaded facts sufficient to make a prima facie case for both.

*Finally*, the Defendants' petition for relief under the Tennessee Public Participation Act has backfired: the petition is conclusory, and this Court should deem it frivolous and award Ms. Ensing her attorney fees and costs. Accordingly, Ms. Ensing respectfully requests that this Court DENY the Defendants' motion in its entirety.

**ARGUMENT**

**I.    THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL UNDER FED. R. CIV. P. 12(B)(6) BECAUSE THEY HAVE FAILED TO ESTABLISH THAT MS. ENSING'S CLAIMS ARE DEFICIENT AS A MATTER OF LAW**

"On a motion to dismiss for failure to state a claim, 'the movant bears the burden of proving that no claim exists.'" *Am. Addiction Ctrs., Inc. v. Nat'l Assoc. of Addiction Treatment Providers*, No. 3:19-cv-00367, 2021 WL 2433218, at *2 (M.D. Tenn. Jan. 25, 2021) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008)). The Court must take all the factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint need only state facts that, if true, would plausibly state a claim for relief. *Id.* A claim for relief is facially plausible where the factual allegations allow the Court to reasonably infer that that a defendant is liable for the misconduct alleged. *Id.*

**A.    Ms. Ensing Need Not Plead Actual Malice Because the Defamatory Statements Were On a Matter That Is Quintessentially of Private Concern**

The Defendants' claim that Ms. Ensing must plead actual malice fails because the Defamatory Statements concerned their business relationship. A business relationship is quintessentially a matter of private concern. This Circuit has recognized that the "public concern" category is narrow, comprising only "subject[s] of legitimate news interest" and "subject[s] of general interest and of value and concern to the public." *Higgins v. Ky. Sports Radio, LLC*, 951 F.3d 728, 734 (6th Cir. 2020) (citing *San Diego v. Roe*, 543 U.S. 77, 83–84 (2004)). On the other hand, the "private concern" category is extremely broad, as it includes "[e]verything else." *Id.*

2

Courts look to prior decisions as guideposts, assessing how the "content, form, and context" of the speech at issue in the instant case compare to the speech at issue in prior cases "as revealed by the whole record." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147–48, (1983)). The *Higgins* court used *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* and *Snyder v. Phelps* as its guideposts for, respectively, matters of private and public concern. Those cases are also instructive here, and support the conclusion that the Defamatory Statements are each on a matter of private concern.

### 1.      Content

In *Dunn & Bradstreet*, the Court held that the content of the defamatory publication—information on the plaintiff's creditworthiness—was a matter of private concern. 472 U.S. 749, 762 (1985). Here, the content of the Defamatory Statements—Sephora's purported reasons for terminating its business relationship with Ms. Ensing—is even more clearly a matter of private concern: credit reports, by their nature, are of legitimate interest to at least some persons other than publisher; by contrast, nobody outside of Sephora's upper management had a legitimate interest in the company's reasons for terminating its business relationship with Ms. Ensing. Certainly, the public has no interest in such information. *Cf. Snyder*, 562 U.S. 443, 454 (2011) (defining matters of "public import" as messages relating to the fate of our nation, its political and moral conduct, homosexuality in the military, and scandals involving religious organizations). Thus, the content factor strongly supports a finding that the Defamatory Statements were on a matter of private concern.

### 2.      Form

The Defamatory Statements most closely resemble press releases. In *Snead v. Redland Aggregates Ltd.*, the Fifth Circuit held that a press release, reported in industry publications, was a matter of private concern because the information conveyed was only of interest to a particular industry. 998 F.2d 1325 (5th Cir. 1993). This reasoning is even more compelling here because the Statements were directed at appeasing a very small group of ill-intentioned provocateurs *see*, *e.g.*,

ECF No. 1 ¶¶ 44 ("I'm so happy we ran Amanda Ensing off social media"), which is a far smaller audience than in *Snead*. Accordingly, the form factor also supports a finding that the Statements were on a matter of private concern.

### 3.    Context

The context clearly shows that the Defendants are attempting to hide behind the First Amendment to insulate their private-matter speech from liability. *Snyder*, 562 U.S. 443, 455 (2011). *First*, the Defendants had a longstanding relationship with Ms. Ensing, were familiar with her work, and always gave her substantial praise. *Compare*, *e.g.*, ECF No. 1 ¶ 17 ("Ms. Ensing was diligent and loyal, receiving substantial praise for the quality of her vlogging work with Defendant Sephora"), *and id.* ¶ 24 ("Sephora 'loved [Ms. Ensing's] video.'"), *with Snyder*, 562 U.S. at 455 ("[The defendants] had been actively engaging in speaking on the subjects addressed in its picketing long before it became aware of [the plaintiff].").

*Second*, the Defendants' prior praise establish that they did not "honestly believe" the Defamatory Statements: Indeed, they "loved [the] video" that she had made on their behalf *just days before* they published the first of the Statements. ECF No. 1 ¶¶ 24–28. *Cf. Snyder*, 562 U.S. at 455 ("there can be no serious claim that [defendant]'s picketing did not represent its 'honestly believed' views on public issues.").

*Third*, it is clear that the Defamatory Statements were made solely *because of* their relationship with Ms. Ensing: specifically, to minimize their business relationship with her after receiving a few negative comments from a small cadre of provocateurs. *See*, *e.g.*, ECF No. 1 ¶ 27. Thus, it is clear that the Defendants are attempting to "mask an attack on [Ms. Ensing] over a private matter." *Snyder*, 562 U.S. at 455. Accordingly, the Defamatory Statements were clearly on a matter of private concern. This alone is fatal to their argument that Ms. Ensing must plead actual malice.

**B.      Ms. Ensing Need Not Plead Actual Malice Because She Is Not a Public Figure for Purposes of This Litigation**

Throughout their motion, the Defendants assume, based solely on her occupation, that Ms. Ensing is a public figure. ECF No. 14 at 16. However, carefully cherrypicked quotations aside, the Defendants' offer no authority for this assumption. This assumption is contrary to well-established precedent in this Circuit.

There are two kinds of public figure plaintiffs: the general-purpose public figure, and the limited-purpose public figure. *Hudik v. Fox News Network, LLC*, 3:19-cv-00127, 2021 WL 62832, at *5 (M.D. Tenn. Jan 7, 2021) (citing *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014)); *accord Press Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978). As discussed below, the overwhelming weight of authority establishes that Ms. Ensing is neither type of public figure.

**1.      The Defendants Fail to Establish that Ms. Ensing Is a General-Purpose Public Figure**

A general-purpose public figure is one who has attained "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Cooley*, 759 F.3d at 527 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)). Designation as a general-purpose public figure requires "**clear evidence** of [the plaintiff's] [1] general fame or notoriety in the community, and [2] pervasive involvement in the affairs of society." *Gertz*, 418 U.S. at 352 (emphasis added). The Sixth Circuit has endorsed the view that this designation should apply sparingly, and only to those persons whose names have become household words. *Armstrong v. Shirvell*, No. 11-11921, 2013 WL 4833948, at *2 (E.D. Mich. Sept. 11, 2013), *aff'd in part, rev'd in part, and remanded on other grounds,* 596 F. App'x 433 (6th Cir. 2015).

The weight of authority reveals the extremely high bar for general-purpose public figure

designation. In *Pickens v. Cordia*, for example, the Texas Court of Appeals held that the noted industrialist T. Boone Pickens Jr. was not a general-purpose public figure. 433 S.W.3d 179, 186 (Tex. App. 2014). The court reasoned that even though a Google search of T. Boone's name returned a "vast number" of results, there was only "some previous coverage regarding T. Boone outside the business world." *Id.* Therefore, the plaintiff had failed to show that T. Boone possessed "[the] kind of prominence associated with general-purpose public figures." *Id. See also*, *e.g.*, *Tavoulareas v. Piro*, 817 F.2d 762, 767, 772 (D.C. Cir. 1980) (Court of Appeal had "no difficulty in upholding the District Court's conclusion that" president/COO of Mobil Corp., who "took an active role in the public debate during the 1970's over the manner in which the United States should respond to the rise of OPEC and the ensuing energy crisis," was "not a general purpose public figure.").

Here, the Defendants have made no showing, let alone a showing by clear and convincing evidence, that Ms. Ensing has become a household name. Accordingly, they have not established that she is a general-purpose public figure.

### 2.  The Defendants Fail to Establish That Ms. Ensing Is a Limited-Purpose Public Figure

The Sixth Circuit uses a two-prong test to determine whether a plaintiff is a limited-purpose public figure. *Hudik*, 2021 WL 62832, at *6 (citing *Clark v. ABC, Inc.*, 684 F.2d 1208, 1218 (6th Cir. 1982) (citing *Gertz*, 418 U.S. at 345))). The Defendants must establish that: (1) a "public controversy" exists; and (2) that Ms. Ensing "voluntarily injected" herself into the "particular public controversy giving rise to the alleged defamation." *Id.* Here, the Defendants fail to establish the former, and make no argument as to the latter.[1]

### a.  The Defendants fail to establish the existence of a public controversy

---

[1] Thus, the Defendants have waived the "voluntary injection" issue.

Indeed, the Defendants all but concede that no public controversy existed. The Defendants aver that the Defamatory Statements were made in response to questions about "[their] reasons" for "[seeking] to dissociate from [Ms. Ensing]." ECF No. 14 at 9. In so doing, the Defendants concede that the controversy—if one exists at all—is solely about their relationship with Ms. Ensing.

"In analyzing whether a 'public controversy' exists, [this Court should be] mindful that 'all controversies of interest to the public' are not 'public controversies' within the meaning of *Gertz*." *Hudik*, 2021 WL 62832, at *6 (quoting *Clark*, 684 F.2d at 1218). Indeed, only "a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way," is a "public controversy." *Id.* In other words, to prove the existence of a public controversy, the Defendants must establish that Sephora's decision to break its relationship with Ms. Ensing is a dispute that has received public attention because "[1] it is being debated publicly and [2] it had foreseeable and substantial ramifications for nonparticipants." *Id.* at *7. Here, they fail to make either showing.[2]

In *Hudik*, this Court found that there was no public controversy. 2021 WL 62832, at *7. The opinion is instructive because this Court characterized it as "a relatively close call." *Id.* The *Hudik* plaintiff was a well-known singer, songwriter, and music producer: for example, he had performed at the first MTV Spring Break concert, where he was seen by over 80 million television viewers; since 2016, he had released seven singles nationally to radio. *Id.* at *1. The litigation arose after the plaintiff produced a song with vocals by a recently-deceased country singer, and promoted the song to the public by promising that the proceeds would go to the singer's family. *Id.* at 2. The defendant news organization published an article claiming that the promotion was a scam and that the proceeds would

---

[2] Indeed, this case strongly resembles *Time, Inc. v. Firestone*, in which the Supreme Court held that the divorce of the scion of a wealthy industrial family was not a public controversy within the meaning of *Gertz*, despite the fact that it was characterized as a "cause celebre" and may have been of interest to some segment of the public. 424 U.S. 448, 454 (1976).

not, in fact, go to the singer's family. *Id.* The plaintiff's defamation claim followed. *Id.*

The defendant moved to dismiss the claim, arguing that the plaintiff was a limited-purpose public figure. However, the court disagreed. On the *first prong* of the inquiry, the court found that the defendant failed to establish the existence of a public debate. *Id.* at *7. Though the plaintiff was quite famous, there was minimal public disclosure of the dispute prior to the article's publication. *Id.* This satisfied the court that the matter was not of public concern before the article was published. *Id.*

The logic is more compelling here. Ms. Ensing is nowhere near as famous as the *Hudik* plaintiff. Further, Sephora's decision to terminate its relationship with her first became public knowledge *through Sephora's defamatory statements*. Since defendants cannot "create their own defense by making the claimant a public figure," *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979), the Defendants have failed to establish the existence of a public debate.

On the *second prong* of the inquiry, the *Hudik* court found that the dispute had no appreciable ramifications for nonparticipants. 2021 WL 62832, at *8. The defendants argued that "radio DJs, music fans," and the deceased singer's fans might have been affected (presumably, by purchasing the song from the plaintiff under the allegedly false impression that the singer's family would receive the proceeds), but the court found that this argument carried little weight. *Id.* Because "the outcome of the dispute would not be felt by those outside of the dispute," this Court concluded that the defendant had failed to establish the second prong of the inquiry. *Id.*

Again, the court's logic is more compelling here because the Defendants do not (and cannot) explain how the dispute over Sephora's relationship with Ms. Ensing could have any ramifications— let alone appreciable ramifications—for nonparticipants. Accordingly, unlike *Hudik*, this case is not a close call: the Defendants have clearly failed to establish the existence of a public controversy. Since the Defendants have failed to establish that Ms. Ensing is either a general- or limited-purpose public

figure, she need only satisfy Tennessee's negligence standard. *Hudik*, 2021 WL 62832, at *8 (citing *Pate v. Serv. Merch. Co.*, 959 S.W.2d 569, 574–75 (Tenn. Ct. App. 1996)). However, the Defendants did not argue in their brief that Ms. Ensing failed to plead negligence. Thus, Ms. Ensing does not address this question.

> ### b.    Ms. Ensing Pleads Facts Sufficient to Establish That the Defendants Acted With Actual Malice

Under Tennessee law, punitive damages in defamation actions are recoverable on a showing of actual malice. *Myers v. Pickering Firm*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997). A complaint satisfies the actual malice standard by showing that a defendant acted with knowledge that a statement was false or with reckless disregard as to whether it was false or not. *Funks v. Scripps Media, Inc.*, 570 S.W.3d 205, 212 (Tenn. 2019).

Here, Ms. Ensing avers that the Defendants' statements are false, *see, e.g.*, ECF No. 1 ¶¶ 32–35, 38–40, 51, 64, and that the Defendants had knowledge that their statements were false at the time they were made, *see id.* ¶ 30, 53, 65, 71, 78. Since knowledge and other conditions of mind can be alleged generally, Fed. R. Civ. P. 9(b), this alone is sufficient to establish actual malice.

Further, the Defamatory Statements themselves establish scienter: the Defendants' allegations that Ms. Ensing's content "did not align with its values around inclusivity," that such content made her "inappropriate partner," that she "made light" of January 6 "on her social media platforms," and that she "used her platform" to share racist language all necessarily imply knowledge of what was posted on Ms. Ensing's social media. At least, it can be reasonably inferred from the Statements that the Defendants had such knowledge at the time they made the Statements.

Moreover, the Defendants' knowledge can be inferred from their insistence on the moral character clause. ECF No. 1 ¶ 23. The clause specifically empowered the Defendants to demand removal of the sponsored video based on past occurrences. *Id.* It can reasonably be inferred that they

insisted on including this clause because they were aware of Ms. Ensing's politics and social views, and wanted to give themselves an out in the event that they received criticism from a cadre of disingenuous malingerers.

### C.   The Defendants Have Failed to Establish That the Defamatory Statements Are Not Actionable

The Defendants are correct that the First Amendment bars liability for the expression of an idea. Opinions, on the other hand, are only protected to the extent they are synonymous with ideas. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990) (as used in *Gertz*, the term "opinion" is equated with "idea"). On the other hand, the Defendants can be held liable for all statements, such as the ones sued upon here, that are capable of being proved objectively incorrect. *Clark v. Viacom Intern., Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015) (citing *Milkovich*, 497 U.S. at 20).

The Supreme Court has held that "expressions of 'opinion' may often imply an assertion of objective fact." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (quoting *Milkovich*, 497 U.S. at 18). The Sixth Circuit has characterized such statements as "mixed" expressions of opinion. *Id.* Mixed opinions are actionable because they imply that the opinion is based on undisclosed defamatory facts. *Id.*

A defamation claim cannot be dismissed unless the defendant establishes that a statements is entirely incapable of conveying a defamatory meaning. *Am. Addiction Ctrs., Inc.*, 2021 WL 243218, at *11. Further, whether a statement was actually understood by readers in its defamatory sense is a question of fact for a jury. *Id.*

*American Addiction Centers*, decided recently by this Court, stressed the importance of context in analyzing defamatory statements. In that case, the defendant, a national trade organization which had around six hundred members, allegedly defamed the plaintiff at one of its trade meetings, which was attended by many of the plaintiff's actual or potential customers. *Id.* at *1. Specifically,

the defendant gave a presentation discussing the plaintiff's "unethical, deceitful, and dishonest in their business practices." *Id.* at *11–12. Like Sephora, the defendants also stated that the plaintiff's conduct violated its code of ethics. *Id.* at *12. This Court explained that, in the context of a motion to dismiss:

> A trial court may determine that a statement is not defamatory as a matter of law **only when the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense**. ... When considering whether a statement is capable of being defamatory, it must be judged within the context [in which] it is made . . . [and] in light of the surrounding circumstances.

*Id.* (internal quotations omitted) (emphasis added).

Stressing that "*context matters*," the court reasoned that, based on the defendant's significance in the industry, its statements were "more likely to be believed to be true and more likely to be a 'serious threat' to [the p]laintiffs' reputation." *Id.* (emphasis retained). The court held that, since a jury could conclude that the statements were defamatory, the defendant's motion to dismiss had to be denied. *Id.*

In the instant case, the context surrounding Sephora's statements militate strongly against dismissal. *First*, Sephora is a "leader in global prestige retail" with $10 billion annual revenue, over 2600 stores, and nearly 21 million social media followers. ECF No. 1 ¶¶ 3, 9, 40. Thus, a reasonable juror could infer that Sephora is extremely influential in the beauty industry, *id.* ¶ 39, making its statements more likely to be believed as true. *Second*, it would be apparent to any reasonable juror that Sephora became a leader in global prestige retail by making business decisions—such as which influencers to partner with—based on rational analyses of facts, not based on "inherently subjective opinions." *Third*, it would likewise be apparent that global prestige retailers ordinarily do not make public statements without first verifying their factual accuracy (if for no other reason than to avoid defamation liability). For these reasons, a reasonable juror could infer that readers of the Defamatory Statements would assume the veracity and assume that they were based on undisclosed facts.

The context surrounding Ms. Yeh's statement also militates strongly against dismissal. Ms. Yeh, the Chief Marketing Officer, made her statement to Sephora's employees. A juror could reasonably conclude that Sephora's employees believed that senior managers make business decisions, such as terminating a business relationship, only when there is a factual basis to do so. Likewise, it is reasonable to infer that the employees believed that company-wide announcements are predicated on facts. Thus, a reasonable juror could infer that the recipients of Ms. Yeh's statement assumed its veracity and understood it as being an assessment of undisclosed facts.

Finally, Ms. Ensing has already suffered extensive harm from the Defendants' statements. *See*, *e.g.*, ECF No. 1 ¶¶ 38–40, 54. Thus, it is clear that the Defendants' statements were—and continue to be—a serious threat to her reputation.

### 1. Sephora's Allegation That Ms. Ensing Shared Content That Is "Not Aligned With Sephora's Values Around Inclusivity" Is Actionable

The test for whether a statement is capable of a defamatory meaning turns upon the factual assertions that the reasonable reader would have understood the statement to be making. *Clark*, 617 F. App'x at 509. Here, Ms. Ensing has averred that Sephora defined its values around inclusivity, going so far as to put those definitions on its publicly accessible website. ECF No. 1 ¶ 32. It is reasonable to infer that many of Sephora's 21 million social media followers, having affirmatively chosen to follow the company, are aware of Sephora's website and the page defining inclusivity. These followers are the same persons to whom this statement was published. *Id.* ¶¶ 29–32.

Therefore, reasonable readers of this Statement would have understood that Sephora terminated its business relationship with Ms. Ensing because she shared content supportive of racial bias and racist working environments and opposing equity, justice, and inclusion. *Id.* ¶ 32. As explained above, because Sephora was the speaker, these readers would have given this Statement great credence and assumed it was based on undisclosed facts. Since Ms. Ensing's content is readily

available online, this Statement can also be proved incorrect. Accordingly, Ms. Ensing has plausibly alleged that this statement is actionable.

Sephora's anemic attempt to hide behind *Liberty Lobby*, *see* ECF No. 14 at 19, is readily distinguishable because, unlike "the American idea," *id.*, Sephora's values around inclusivity are well-defined and readily available on its website, and thus are not subject to debate. Therefore, whether or not Sephora "cited that website," *id.* at 20, is irrelevant.

The Defendants' reliance on *Weidlich v. Rung* is puzzling because it refutes their claims that they disclosed the bases for the Statements. *Id.* In *Weidlich*, the court reversed a defamation judgment in favor of the plaintiff because:

> [The defendant]'s Facebook post did not consist merely of [the claim that the plaintiff was a white supremacist]. . . . [The defendant]'s statement instead related to the photograph contained in her post. Anyone reading [the defendant]'s post had full access to the facts available to [the defendant]—the photo. So informed, readers were free to accept or reject [the defendant]'s opinion as they saw fit. . . . **Had [the defendant] simply written that "[the plaintiff] is a white supremacist" with no accompanying photograph or context, that would be another matter**.

No. M2017-00045, 2017 WL 4862068, at *6–7 (Tenn. Ct. App. Oct. 26, 2017) (emphasis added). Here, in contrast, Sephora posted on social media that Ms. Ensing was sharing content that was not aligned with Sephora's values around inclusivity. ECF No. 1 ¶ 32. Yet Sephora does not—because it cannot—argue that its social media posts actually provided Ms. Ensing's content that supposedly formed the basis for this statement. A vague reference to Ms. Ensing's content is woefully insufficient. Therefore, Sephora's 21 million subscribers did not have "full access to the facts available to" Sephora, and were not free to accept or reject Sephora's statement as they saw fit. Accordingly, Ms. Ensing has plausibly averred that this Statement is actionable.

### 2. Sephora's Statement That Ms. Ensing Was an "Inappropriate Partner for Its Brand" Is Actionable

A reasonable juror could conclude that Sephora's social media followers would have viewed this Statement in light of the prior Statement. *See* discussion *supra* Part I(C)(1). Thus, Sephora's assertion that Ms. Ensing was an inappropriate brand partner must be viewed in that context. *Clark*, 617 F. App'x at 508 (when determining whether defamatory statements are actionable, they should be viewed as a whole). With that context in mind, this Statement makes the same false allegations as to why Sephora terminated its relationship with Ms. Ensing. Further, as with the prior Statement, Sephora has not established that it provided Ms. Ensing's content, so readers were not free to accept or reject this statement as they saw fit. Accordingly, Ms. Ensing has plausibly averred that this statement is actionable.

### 3. Sephora's Statement That Ms. Ensing "Made Light of the Violence and Tragic Loss of Life" at the Capitol Is Actionable

Sephora's accusation that Ms. Ensing was "making light of the violence and tragic loss of life at our national Capital [sic] last month on her social media platforms" is certainly actionable. The Defendants' argument to the contrary fails because, as with their other statements, they ignore context. Specifically, they ignore the fact that the attack on our Capitol was universally condemned.[3] Thus, there is no question that the great majority of readers understood that the event was quite serious and

---

[3] *Compare*, *e.g.*, *Sen. Cruz Issues Statement on January 6 Commission*, OFFICE OF U.S. SENATOR FOR TEXAS, TED CRUZ (May 28, 2021), https://www.cruz.senate.gov/?p=press_release&id=5858 ("The January 6 terrorist attack on the Capitol was a dark moment in our nation's history"), *with Statement by President Joe Biden on the Six-Month Anniversary of the January 6th Insurrection on the Capitol*, WHITEHOUSE.GOV (July 6, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/06/statement-by-president-joe-biden-on-the-six-month-anniversary-of-the-january-6th-insurrection-on-the-capitol (Comparing attack on Capitol to the Civil War, and charactering it as "an existential crisis" that "shocked and saddened the nation."). This Court may judicially notice statements on public officials' government websites. Fed. R. Evid. 201; *see also Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670, 2008 U.S. Dist. LEXIS 69542, at *17–18 (N.D. Cal. Sept. 8, 2008) (collecting cases).

demanded a high degree of concern and solemnity. Further, as explained above, most readers would assume that this Statement is based on facts, not subjective opinion. Moreover, as with the prior Statements, Sephora did not provide readers with Ms. Ensing's content, so readers were not free to accept or reject this Statement as they saw fit. Accordingly, Ms. Ensing has plausibly averred that this Statement is actionable.

### 4. Ms. Yeh's Statement That Ms. Ensing "Used Her Platform To Share or Highlight Racially Insensitive and Discriminatory Language, and Made Light of the Violence at Our Nation's Capital Last Month" Is Actionable

The portion of Ms. Yeh's Statement about making light of the January 6 attack is actionable for the same reasons given above. *Supra* Part I(C)(3). That portion of the Statement accusing Ms. Ensing of making racially discriminatory and insensitive statements is also actionable. As discussed above, it is reasonable to infer that, because Ms. Yeh is part of Sephora's senior management, the company's employees would have understood that this Statements was based on facts. Once again, because the Defendants do not—and cannot—argue that Ms. Yeh included Ms. Ensing's content in the email, Sephora's employees were not free to accept or reject this Statement as they saw fit. Accordingly, Ms. Ensing has plausibly averred that this statement is actionable.

Ms. Yeh's argument that this statement was not published, ECF No. 14 at 22, fails because she does not establish that making statements actionable under the torts of defamation and false light is within the scope and course of her employment.

### D. The Defendants Have Failed to Show That They Are Entitled to Relief Under the Tennessee Public Participation Act (TPPA)

Because the Defendants are seeking relief under the TPPA, they "ha[ve] the burden of making a prima facie case" that they are being sued because they exercised their "right to free speech, . . . or right of association." Tenn. Code Ann. § 20-17-105(a). Yet, in lieu of a prima facie showing, the Defendants state only that "[t]his action is unquestionably based on, relates to, or is in response to

15

[their] exercise of the right to free speech [and] right of association." ECF No. 14 at 31. This quintessentially conclusory statement comprises the full extent of their argument. Therefore, the Defendants fail (indeed, did not even attempt) to make the TPPA's threshold showing.[4] Accordingly, this Court must deny the Defendants' TPPA petition.

Where the court determines that a TPPA petition is frivolous, it may award the responding party her costs and reasonable attorney's fees incurred in opposing the petition. Tenn. Code Ann. § 20-17-107(b). Here, the fact that the Defendants made no attempt at a prima facie showing establishes that their TPPA petition is frivolous. Accordingly, this Court should award Ms. Ensing her costs and attorney's fees incurred in researching this novel statute, relevant case law in this and other circuits, and preparing this portion of her Response.

### E. Ms. Ensing Has Stated a Claim for False Light

As discussed above, *supra* Part I(B)(2)(b), Ms. Ensing has plausibly alleged both actual malice. She has also alleged objective falsity.

Ms. Ensing has also plausibly alleged that Ms. Yeh's email was given publicity. She avers that Ms. Yeh sent the email to "all members of [the] Sephora Employee community." ECF No. 1 ¶ 35. Further, she avers that Sephora has around 2600 stores. *Id.* ¶ 40. While she does not aver how many people Sephora employs, it seems reasonable to infer that at least several are employed at each store. Thus, Sephora's employees number at least in the tens of thousands. When Sephora's administrative, managerial, and other corporate employees are considered, it can reasonably be inferred that Sephora's employees number in the hundreds of thousands.

For purposes of the "publicity" element, "the distinction . . . is one between private and public communication." Restatement (2d) of Torts § 652D, cmt. a. Publicity includes anything other than a

---

[4] Instead of attempting to develop a prima facie showing, the Defendants' wasted nearly four pages of their brief on a dubiously-reasoned *Erie* analysis. *See* ECF No. 14 at 27–30.

communication to a single person or small group of persons. *Id.* For example, "publicity" includes "a handbill distributed to a large number of persons" or "a statement made in an address to a large audience." *Id.* Since the complaint raises the reasonable inference that the email was sent to tens or hundreds of thousands of people, the false statements therein were given publicity under either the handbill or large audience tests. Accordingly, Ms. Ensing has plausibly alleged publicity, and has stated her false light claims.

### F.   Ms. Ensing Has Stated a Claim for Tortious Interference With Prospective Business Relationships

As discussed above, *supra* Parts I(A), (B), Ms. Ensing is not a public figure, the Defendants' statements were not on a matter of public concern. Thus, she need not plead actual malice.

The Defendants incorrectly claim that Ms. Ensing has not pleaded the second element of this this claim. ECF No. 14 at 25. However, in *Trau-Med*, Tennessee's Supreme Court was clear that a plaintiff states a claim by pleading either "an existing business relationship with specific third parties **or** a prospective relationship with an identifiable class of third persons; [and] (2) the defendant's knowledge of **that relationship**." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis added). Here, Ms. Ensing has alleged that the Defendants knew she was a beauty influencer, had a long and fruitful business relationship with her on that basis, ECF No. 1 ¶¶ 16, 17, 21, 22, and that social media influencers typically do work on behalf of many brands, *id.* ¶ 1. Further, Sephora contracted Ms. Ensing through a "third-party platform" designed to connect influencers with brands. *Id.* ¶ 25. From these averments, a juror could reasonably infer both that Ms. Ensing has prospective relationships with beauty brands (the identifiable class of third persons) and that the Defendants knew of her prospective relationships with that class.

As to the fourth element, Ms. Ensing has plausibly alleged improper motive. *See id.* ¶¶ 4, 7, 29 (driving her out of the beauty industry). Further, since her defamation claim should not be

dismissed, she has also pleaded improper means. *See Trau-Med*, 71 S.W.3d at 701 n.5 (improper means includes any act that is independently tortious). Accordingly, Ms. Ensing has plausibly pleaded her tortious interference claim.

### G.    Ms. Ensing Has Stated a Claim for Conspiracy

Ms. Ensing's other claims should not be dismissed. Thus, there will be underlying wrongful conduct to support her conspiracy claim.

The Defendants' other assertion, that Ms. Ensing alleged conspiracy only against Ms. Yeh in her official capacity, ECF No. 14 at 26, finds no support in the text of the complaint. *See* ECF No. 1 ¶¶ 87–93. Quite the contrary, Ms. Ensing expressly sued Ms. Yeh in both her individual and official capacities, *id.* ¶ 10, and the conspiracy claim is expressly brought against "All Defendants," *id.* at 18. Further, Ms. Yeh has not established that participating in the dissemination of statements actionable as defamation and false light torts is within the scope and course of her employment. Thus, Ms. Ensing has plausibly alleged her conspiracy claim.

## II.    THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL UNDER FED. R. CIV. P. 12(B)(2) BECAUSE MS. ENSING HAS ESTABLISHED PERSONAL JURISDICTION

Where, as here, a motion to dismiss under Rule 12(b)(2) is brought without an evidentiary hearing, the court must consider all pleadings and affidavits in the light most favorable to the plaintiff. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014). To defeat such a motion, the plaintiff "need only make a prima facie showing of jurisdiction." *Id.* Further, this court cannot weigh the controverting assertions of the party seeking dismissal: Rather, dismissal under Rule 12(b)(2) is only proper if the plaintiff's allegations collectively fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Indeed, the Sixth Circuit "want[s] to prevent nonresident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit," such as Ms. Yeh's, "denying all jurisdictional facts." *Id.* The exercise

of personal jurisdiction is proper so long as a defendant is not haled into court "solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985).

### A.     This Court Has Personal Jurisdiction Over the Defendants

In *Blessing v. Chandraskhar*, the plaintiffs were Kentucky residents. 988 F.3d 889, 892 (6th Cir. 2021). They sued the defendants over several tweets about the plaintiffs' conduct while visiting Washington, D.C. *Id.* Citing lack of personal jurisdiction, the Eastern District of Kentucky dismissed the claims. *Id.* at 893–94. On appeal, the Sixth Circuit affirmed. *Id.* at 907. It reasoned that personal jurisdiction was absent because there was no evidence that the defendants hoped their defamatory comments would reach Kentucky specifically, and because the defendants did not have any preexisting relationship with the plaintiffs. *Id.* at 906. Further, the court noted that Kentucky was not the focal point of the defamatory tweets because they specifically concerned the plaintiffs' conduct in Washington, D.C. *Id.*

Each of the indicia that were absent in *Blessing* is present here. *First*, it is abundantly clear that the Defendants hoped the defamatory statements would reach Tennessee. Ms. Ensing averred that the Defendants intended to injure her reputation.[5] ECF No. 1 ¶¶ 53, 65, 71, 74, 89. Courts have long understood that the principal injury from defamation occurs "where the victim works and lives" and where "most of the people--family, friends, business associates, etc.--are found with whom [s]he has personal or commercial transactions, which might be impaired by defamation." *Kamelgard v. Macura*, 585 F.3d 334, 342 (7th Cir. 2009).

Further, the Defendants knew Ms. Ensing resided in Tennessee at the time they made the Statements: they would have seen her Tennessee address before they contracted with her in January

---

[5] Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

2021. (*See* Ensing Decl. ¶ 13.) They certainly would not have been oblivious to the many other indicia of her Tennessee residence. (*See id.* ¶¶ 2, 4–5.) Because the Defendants knew where Ms. Ensing resided and made the defamatory statements in order to harm her reputation, it is reasonable to infer that they at least hoped, if not intended, that such statements would reach Tennessee. Indeed, it is difficult to conclude otherwise.

*Second*, the parties had a relationship centering on Tennessee that antedated the defamatory statements. Sephora contracted Ms. Ensing to promote their products. ECF No. 1 ¶ 21. When Ms. Ensing signed the contract, she was in Tennessee. (Ensing Decl. ¶ 8.) Ms. Ensing then filmed and edited a promotional video, submitted it to Sephora for review, and posted it to YouTube. *Id.* ¶ 24; (Ensing Decl. ¶¶ 8–9.) She did each of these in Tennessee. (Ensing Decl. ¶ 9.) Moreover, the Defendants published the Defamatory Statements *because of* this relationship (to distance themselves from it). (ECF No. 1 ¶ 25.) Therefore, Ms. Ensing's claims "arise out of" and are "related to" the Defendants' activities in Tennessee. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 415 (1984).

*Third*, and relatedly, Tennessee is the focus of the Defendants' statements. In *Calder v. Jones*, the Supreme Court held that California could properly exercise jurisdiction over Florida defendants based on their conduct in Florida:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. . . . [A]nd the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

465 U.S. 783, 788–89 (1984). Here, the Defendants' statements both concerned and drew on Ms. Ensing's activities in Tennessee. (Ensing Decl. ¶¶ 6–9.) They impugned her personal and professional

reputations, which are centered in Tennessee.[6] (*Id.* ¶¶ 10–11.) As discussed above, Ms. Ensing suffered—and continues to suffer—the brunt of the harm in Tennessee. Indeed, Ms. Ensing has spoken with Tennessee residents who read the Defamatory Statements. (*Id.* ¶ 13.) Thus, Tennessee is the focus of the Defendants' statements and the harm inflicted on Ms. Ensing. Accordingly, Ms. Ensing has made a prima facie case for personal jurisdiction.

**B.      If the Court Finds That It Lacks Personal Jurisdiction, Ms. Ensing Requests Jurisdictional Discovery**

This Court has discretion whether to grant jurisdictional discovery. *Brewer v. All. Coal, LLC*, No. 20-41-DLB-EBA, 2021 U.S. Dist. LEXIS 134886, at *5 (E.D. Ky. July 20, 2021). However, "[i]f jurisdiction hinges on facts not readily available to the plaintiff, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Id.* at *5–6.

Here, a number of jurisdictional facts are not readily available to Ms. Ensing: the analytics for Sephora's social media accounts (so that Ms. Ensing can determine how many subscribers are in Tennessee, and how many read the Defamatory Statements); all communications, documents, writings, or other records created by Sephora, its employees, agents, contractors, servants, or anyone acting on its behalf, in the period of January 5, 2021 to the present, that discuss or otherwise mention Ms. Ensing; and a list of each and every Sephora employee in Tennessee who received Ms. Yeh's email, and the total number of employees who received the email. If this Court concludes that it lacks personal jurisdiction, Ms Ensing requests jurisdictional discovery as to the foregoing facts.

**III.    THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL UNDER FED. R. CIV. P. 12(B)(3) BECAUSE VENUE IS PROPER IN THIS DISTRICT**

As with personal jurisdiction, if a plaintiff makes a prima facie showing that venue is proper,

---

[6] Indeed, Ms. Ensing's connection to Tennessee is so well known that it was mentioned in an article about her. *See* Camille Moore, *10 Things You Didn't Know About Amanda Ensing*, TVOM (Jan. 2021), https://www.tvovermind.com/amanda-ensing.

the defendant's motion must be denied. *Zimmer Enters. v. Atladia Imps., Inc.*, 478 F. Supp. 2d 983, 986 (S.D. Ohio 2007). Further, the pleadings and affidavits must be read in the light most favorable to the plaintiff. *Id.* Venue is proper in any district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Venue may be proper in more than one district, and a district need not be the "best" forum in order for venue to lie there. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

### A.      Venue Is Proper As to Sephora

For venue purposes, an entity defendant is deemed to reside in any judicial district in which that defendant is subject to the court's personal jurisdiction with respect to the civil suit in question. 28 U.S.C. § 1391(c)(2).

As discussed above, this Court has personal jurisdiction over Sephora in this suit. Accordingly, venue also lies in this judicial district.

### B.      Venue Is Proper As to Ms. Yeh

To establish a substantial connection to the claim, it is generally sufficient to demonstrate that injury or loss alleged in the lawsuit occurred in the chosen venue. *Bay Cty. Democratic Party v. Land*, 340 F. Supp. 2d 802, 809 (E.D. Mich. 2004) (citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 41–43 (1st Cir. 2001)).

Here, Ms. Ensing avers that she resides in this judicial district, and that she was harmed by Ms. Yeh's defamatory email. ECF No. 1 ¶¶ 8, 37–42. As noted above, defamation victims suffer the greatest harm where they reside. Accordingly, Ms. Ensing has established that venue lies in this district as to Ms. Yeh. *See Rickett v. Smith*, No. 1:14CV-70, 2014 U.S. Dist. LEXIS 154200 at *16 (W.D. Ky. Oct. 30, 2014).

Separately, Ms. Yeh has not engaged in a substantive venue analysis; rather, she has stated in conclusory fashion that venue is improper. *Cf. Audi AG v. Izumi*, 204 F. Supp. 2d 1014, 1022–23

(E.D. Mich. 2002). Thus, this portion of her motion should be denied for that reason alone. *Id.* Finally, the Defendants are not entitled to a transfer under 28 U.S.C. § 1406(a) because venue is proper in this judicial district.

## CONCLUSION

For all the foregoing reasons, Ms. Ensing respectfully urges this Court to deny the Defendants' Motion to Dismiss. In the alternative, Ms. Ensing respectfully requests that this Court grant jurisdictional discovery.

Respectfully submitted,


s/ Timothy L. Warnock
Timothy L. Warnock (12844)
Katherine R. Klein (19336)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
(615) 320-3737 (facsimile)
twarnock@rwjplc.com
kklien@rwjplc.com

John M. Pierce* (admitted *pro hac vice*)
PIERCE BAINBRIDGE P.C.
355 S. Grand Ave., 44th Floor
Los Angeles, CA 90071
(213) 400-0725
jpierce@piercebainbridge.com
* Lead Counsel

*Counsel for Plaintiff Amanda Ensing*

24

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the following via the Court's ECF system:

Charles K. Grant
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
(615) 726-5767
(615) 744-5767 (facsimile)
cgrant@bakerdonelson.com

*Counsel for Defendants*

Robert E. Shapiro
Joshua W. Mahoney
Connor T. Gants
Carmel I. Dooling
BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
rob.shapiro@bfkn.com
joshua.mahoney@bfkn.com
connor.gants@bfkn.com
carmel.dooling@bfkn.com

*Counsel for Defendants*

on this the 30th day of July 2021.

s/ Timothy L. Warnock